Smith. The appellant claims error in the Commission's decision and findings of fact and law on the issue of accident, it doesn't appear from my review of the Commission's decision that it conducted a manifestation data analysis of the petitioner's repetitive trauma claims. From my review of the Commission's decision, the Commission stated that a repetitive trauma claim has to manifest itself on a definition of manifestation when the fact of the injury and its possible relationship to employment becomes apparent to a reasonable person or the claimant in this case. We believe the weight of the evidence indicates that the appellant was not aware immediately when he developed symptoms that he had sustained an accident. As a matter of fact, you know that the law states that the manifestation date is not always the date the symptoms first appear. And certainly from a review of the medical records, it indicates the appellant did not become aware that he had a condition which might be related to his work activities until he saw Dr. Narla on January 9, 2012. The Commission also based their denial on what they interpreted was a lack of a description of his work activities in the medical records prior to the petitioner, the appellant visit with Dr. Brian Russell in February of 2012 when he stated that he wanted to turn his claim in for workers' compensation after giving it some thought. In fact, when he saw Dr. Payne, he mentioned lifting at work and work activities. Now, the Commission found Dr. Farden's testimony compelling. And yet looking at it specifically, Dr. Russell did say or gave an opinion that the claimant's work activities caused or may have been a contributing factor to the herniation, correct? Correct. Did Farden ever opine on whether the claimant's job duties aggravated his condition of well-being? He did not. And that is a point that I made in my brief. Is there conflicting medical opinion? There is not conflicting medical opinion. And that was another point that I made. The Commission said a couple of troubling things about Dr. Russell's testimony. Yes, they did. I mean, one is they said his opinion was elicited after a hypothetical question. And then they went on to say, quote, while hypotheticals can be used to elicit causation opinions, the doctor is provided with less than the necessary information. So it sounds like they discredited his opinion solely because it came through a hypothetical. The one opinion he offered that was in response. I mean, is that an appropriate basis upon which to determine the credibility of the opinion? I think it has long been established that an expert, especially a medical expert, can testify based upon facts which are not in evidence but which they reasonably rely upon. And that's what Dr. Russell did. But the Commission also neglected to point out that Dr. Russell came to that conclusion based upon his own conversations with the appellant. And that was completely disregarded by the Commission. Now, the other thing they said was they noted a couple of times that Dr. Russell said there was no way of knowing whether his job duties or everyday living is more of a factor in aggravating. Does it make any difference whether the job duties are more of a factor in aggravating his condition as long as they are a factor? Correct. That is right. You do not have to exclude every other possibility. And the Commission also noted that there was a specific incident where they interpreted Dr. Russell as testifying that a specific incident outside of work or a non-work-related factor causes condition. It's not Dr. Russell's opinion. And, in fact, there is nothing in the record anywhere that establishes that some non-work-related incident occurred that caused his condition. You are right. Now, going back to Dr. Fardon, he expressed no opinion about aggravation. That's correct. But the opinion he did give was he never said, in my opinion, this was not caused by work duties. He said, I can't say with any reasonable degree of medical certainty that it was caused. Right. Is that correct? That's correct. So he really never gave any opinion that it was not caused. He just says, I can't say it was caused. Correct. Okay. And he also stated that his causation opinion was couched in the terms of direct causation, not in an aggravation or anything of that nature. That's correct. I don't believe the Commission properly addressed the issues. I believe the manifest weight of the evidence all compels a finding that the petitioner established that he sustained repetitive trauma injuries as a result of his work. His testimony was unrebutted. The Commission did not even comment or state that his description of his work activities was not accurate or was rebutted. I think the evidence is clear that he did test or he testified that he notified his supervisor after seeing Dr. Narla that he felt his condition was work-related and it was a cervical condition because that's when Dr. Narla made that diagnosis and attributed the shoulder pain and the arm pain. Or in any event aggravated. Aggravated. Correct. Okay. So we would request that the Court command the case to the Commission with instructions to make revised findings on the issue of accident and causation. Thank you. Thank you, Counsel. Counsel, you may respond. Good morning. May it please the Court. Good morning, Counsel. Good morning, Your Honors. My name is Kenneth Smith. I'm here on behalf of the respondent, Logan County Paramedics. We'd ask that you would affirm the Commission's decision in regards to accident and causation. If you look at the evidence of this case, this is really a case of two different stories. The first story being the story presented in the medical records, which is the story that the Workers' Compensation Commission relied on, and the story that is totally contradictory to that story, which is the story that was testified to at hearing and by the petitioner's doctor. If you look at the medical records, nowhere in the medical history in any of the records will you find any complaints in which the petitioner is saying that he has experienced some sort of aggravation of his conditions, because of his job duties. It just does not exist in the records. He began treating in December of 2011, and for the first two months, his history was consistent in him saying that, I just woke up with this pain. I've been having problems falling asleep at night. This man is not saying I'm lifting people at work, and as a result, I'm having problems. He doesn't say that in the records, and that is what the Commission relied on in showing that there was no accident. If you look at this case, there are actually three applications that were filed. The first application is for December 10, 2011 accident, and he's alleging a specific traumatic accident in that case. And then there are two other applications for February 13th date of loss and a January date of loss. Those are specific traumatic. Those are repetitive trauma cases. So it's like the petitioner is throwing out a bunch of theories and hoping that one sticks. The problem with that is the medical records don't support it. They don't support his history at all. The only reference to anything work-related in the histories noted by the doctors is the February 29, 2012 note by Dr. Russell in which Dr. Russell noted he originally thought he pulled his shoulder at work and didn't think much of it, but now he has gone on. He has been advised to turn it into a worker's complaint. Counsel, what do you make of the Commission's or the medical evidence that Dr. Russell stated that the claimant's work activities were at least a contributing factor to the claimant's medical condition, and Dr. Farden apparently provided no medical opinion on whether the claimant's job duties aggravated his condition of ill-being? So doesn't the medical evidence, when you look at it technically, weigh in favor of the claimant based on Russell versus Farden? No, because like I said, when he presented to Dr. Farden, he only presented a specific traumatic event, and that's evidenced by the first application that was filed, the December 2012 application. As I stated, this is a case in which they're trying to throw out a bunch of theories of recovery and trying to hope one of them will stick, whereas Dr. Farden went through all of the records, and there's no indication in the records that Dr. Farden was involved. There's no indication in the records that any sort of repetitive job duties could have caused this injury, because it's not noted, and I think that's the biggest thing in terms of the Commission looking at Dr. Russell. I'd ask the court if they would really believe Dr. Russell's opinion when he actually filled out a short-term disability form for the petitioner, saying that it wasn't a work-related accident. So I don't believe that the medical evidence supports Dr. Russell's claim. It supports Dr. Russell's theory in that it's not in his records at all. Was there any dispute that the claimant had a herniated disc? No, I don't think so. Okay. But even in Dr. Russell's testimony, Dr. Russell said the herniation had to be caused by some traumatic event. Well, it was also undisputed that he did a lot of heavy lifting of patients. Yes. I mean, there's no question in that job, he did a lot of heavy lifting. Dr. Russell's ultimate opinion was that whenever the event occurred where this disc extruded, that the ongoing heavy lifting aggravated his condition. That was Russell's opinion, right? Yes, but where is that in his records? Well, but my point is, you know, you said he presented to Farden as a specific trauma or specific event. But I mean, the employer went into this trial knowing that that was Russell's opinion and offered no medical testimony to rebut that aggravation opinion, right? I mean, the only thing that was presented was Farden, who didn't address that at all. I'm not sure if that's correct, but if you look at the commission's decision, it says that Dr. Russell doesn't have a foundation to make that opinion anyway. Well, they discredited his opinion because it was based on a hypothetical question. What do you think about that? Is that a proper basis to say, you know, well, we're not going to give it as much weight because it was based on a hypothetical? I mean, before Wilson v. Clark, it had to be a hypothetical. I think it is because this is a case where the medical evidence actually contradicts what Dr. Russell is saying. If he had actually reported, I'm lifting at work, it's aggravating my condition, Dr. Russell would have reported that. And there's absolutely no evidence in the record of Dr. Russell's reporting that. Well, in the hypothetical, it didn't even talk about whether he reported anything. It stated what his job duties were and how often he did those job duties. And, I mean, isn't the question whether or not the evidence in the record supports what's in the hypothetical? Exactly. In that trial, the job description was not admitted into evidence. It was barred. So there's no foundation as to – He testified, though. He testified to how many days he worked, how many patients they would transfer per day. But the exact testimony of Dr. Russell was based on the job description, not his testimony. His testimony came after the fact. Well, I – go ahead. But that's not true of the hypothetical that they discredited. I mean, specific facts were put in the hypothetical. Okay. As we said before, the petitioner has to prove that it's against the manifest weight of the evidence. It's clear that the commission considered all of the evidence but decided not to adopt Dr. Russell's testimony. They decided not to adopt the petitioner's testimony, which is contradictory to the medical records, and much of Dr. Russell's testimony, which is contradictory to the medical records and contradictory to his own form. It's either Dr. Russell is committing fraud when he's saying that this person did not have a work injury by filling out a short-term disability form. Let me ask you a question. Was that short-term disability form, did it come before the date on which he noted in his records that the petitioner says this is a worker's complaint? I believe it was after. I'm just wondering the timing of that. Yes, I believe it was after. In terms of you cannot have your cake and eat it too, there are two different sides of the story. What's testified to at trial and what's in the evidence and the records, and I believe the commission showed and proved that the records were more consistent, they were more credible than testimony offered of the fact two or three years after it. And as a result, we'd ask that you affirm the commission decision. Thank you. Thank you, counsel. Dr. Russell did not commit fraud. When he was proceeding with surgery and giving the appellant those forms, the claim had already been denied by the respondent. And the petitioner or the appellant is not required to sit around and wait for a legal finding with respect to his case before proceeding with necessary treatment. If you recall, Dr. Russell was concerned that the treatment take place first, and that is the context in which he made the statement about turning the case into workers' comp. He was worried, in fact, about the delay of medical care for the appellant here. In my opinion, there is no evidence rebutting the appellant's proof at all. There are not two different versions with respect to the specific filing that was filed because the supervisor had completed an accident report alleging a specific date. The appellant prepared a narrative report in follow-up to that in which he's been entirely consistent that there was no specific event. He never claimed that there was, and they don't appear in the records. It's a repetitive trauma claim in the classic sense. And we would ask that the court reverse the commission. Thank you, counsel. It's a matter to be taken under advisement. A written disposition shall issue.